OPINION *Page 2 
{¶ 1} Defendant-appellant Jeremiah Parks appeals his conviction and sentence entered by the Licking County Court of Common Pleas, on one count of felonious assault, in violation of R.C. 2903.11(A)(1) and/or (A)(2), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On December 29, 2006, the Licking County Grand Jury indicted Appellant on the aforementioned charge. Appellant appeared before the trial court for arraignment on January 22, 2007, and entered a plea of not guilty. The trial court appointed counsel on Appellant's behalf. The matter proceeded to jury trial on April 24, 2007.
 {¶ 3} Officer Jerry Smith with the Utica Police Department testified he was working on November 14, 2006, when he was dispatched to 785 North Street in Utica, Licking County, Ohio, on a call involving a fight with a baseball bat. When the officer arrived, Appellant and four friends were sitting on a porch. The officer spoke with Appellant, trying to determine what had transpired. Appellant told him Rod Williamson arrived at his home, and stood in the front yard, cursing Appellant and challenging him with a baseball bat. Appellant told Officer Smith Williamson had the bat drawn back so he (Appellant) shoved him. Williamson again drew back the bat and Appellant punched him. Appellant punched Williamson a second time after Williamson continued to hold up the bat. Appellant grabbed the bat, threw it into a creek, and punched Williamson a third time. *Page 3 
 {¶ 4} Bonnie Ramseyer testified, at approximately 3:00pm on November 14, 2006, she was driving with her granddaughters on the way to a gym class for the girls. Ramseyer was traveling down Utica Road and onto North Street when she noticed a car stopped in her lane of travel. Ramseyer observed three or four young men involved in a scuffle. Ramseyer's attention was momentarily drawn away from the fracas and onto her grandchildren after another vehicle cut her off, forcing her to slam on the brakes of her car. Ramseyer proceeded down the street and observed one young man walking away with one or both hands covering his face. She then saw another young man walking out of a ditch, holding a baseball bat. One or two other young men were also present. Ramseyer drove through and, when she was far enough away, she called 9-1-1 on her cell phone. The witness acknowledged, although she saw a bat, she could not identify which individual was holding it. She noted she did not see anyone holding the bat in a swinging motion. Later in her testimony, she reiterated she saw the young men shoving and swinging their arms, but did not see anyone swing the bat.
 {¶ 5} Robert Curtis, Chief of the Utica Police Department, testified on November14, 2006, he was dispatched to the area of North Street along with Officer Smith. Upon arriving, Chief Curtis spoke to Appellant and the other individuals at the scene, and learned there had been an altercation involving a baseball bat. Appellant advised Chief Curtis that Williamson stopped his vehicle in the street near Appellant's home, exited with a baseball bat in his hand, and proceeded toward Appellant. Appellant walked toward Williamson with the intention of confronting him (Williamson). When Chief Curtis spoke with Appellant the first time, Appellant did not mention Williamson drawing back the baseball bat and threatening him with it. Appellant also *Page 4 
did not tell Chief Curtis about Williamson swinging at him with the bat. However, in his voluntary written statement, Appellant stated Williamson drew back the bat as if he were going to strike Appellant. Chief Curtis described Appellant as angry, upset, and very vocal when he initially spoke with him. Appellant did not have any visible injuries nor did he complain of any injuries.
 {¶ 6} Rodney Williamson testified, at approximately 3:18pm on November 14, 2006, he and his friend, Carmon Rausch, left school after a basketball scrimmage and proceeded to Williamson's residence. As the two traveled to Williamson's house, they passed Appellant's house. Williamson recalled Appellant and a few people were in the front yard. When Williamson looked over, he saw Appellant making gestures indicating he (Appellant) wanted to fight. Williamson continued to drive to his house.
 {¶ 7} Williamson's parents gave him some money, then he and Rausch returned to his vehicle and proceeded to drive the way they had originally came, back towards school to meet some friends. Williamson stated as they drove past Appellant's house, Appellant jumped in front of his car. Williamson, who was traveling approximately 35miles/hour, slammed on the brakes. He stopped his car, and retrieved a baseball bat from the back seat. Williamson explained he grabbed the baseball bat as he exited the car because Appellant had previously threatened to beat him up. Williamson yelled at Appellant, "What the f-are you doing in the road, get out of the road." He looked over his left shoulder and saw another individual approaching him. Williamson turned his attention back to Appellant, who pushed him into the side of the car. Williamson gripped the baseball bat, and braced himself. As he turned, he saw another individual walking *Page 5 
out of a gully. The bat was grabbed out of his hands and he felt a blow to his face. Williamson held his jaw, and turned to brace himself on the car. He felt another blow to the back of his legs and fell to the ground. Williamson stated he never advanced toward Appellant nor raised the bat against him, staying by his vehicle the entire time. Williamson sustained a compound fracture on the right side of his jaw, a broken bone in the back left side of his jaw, and a broken nose. Williamson spent four or five days in the hospital and underwent surgery on his jaw.
 {¶ 8} Appellant called Dusk Pulver to testify on his behalf. Pulver testified she was at Appellant's house when Williamson drove past the first time. Thereafter, she and two friends left for a short time. When they returned, Pulver observed Williamson standing against a car, bleeding. Appellant and Williamson's mother were yelling at each other. Pulver did not see anybody fighting. The only time she saw a baseball bat was when Joshua Springs, one of Appellant's friends, handed one to Williamson's mother. On cross-examination, Pulver stated the altercation was over when she returned. She did not see any sort of struggle between Appellant and Williamson over the baseball bat, nor did she see anyone being hit with the bat or being punched.
 {¶ 9} Joshua Springs testified, on the afternoon of November 14, 2006, he and Appellant were "hanging out" in Appellant's front yard. Springs recalled Williamson and Rausch drove by, "honked at us and flipped us off." Ten to fifteen minutes later, Williamson and Rausch were again traveling down the street when Williamson stopped his vehicle. Appellant walked toward the street, but Springs noted he never walked in front of Williamson's car. Williamson exited his vehicle, grabbing a baseball bat from the backseat. Appellant and Williamson exchanged words. Springs recalled Williamson *Page 6 
was acting in a threatening manner and appeared upset. Appellant grabbed the bat out of Williamson's hands and threw it toward a creek on the opposite side of the street. Springs reiterated Williamson was obviously angry about something when he exited his vehicle. Springs observed Appellant strike Williamson on the right side of his face. Williamson fell back then walked away. On cross-examination, Springs conceded Williamson never drew back the bat or threatened Appellant with it.
 {¶ 10} Appellant testified on his own behalf. Appellant stated he has known Williamson for a couple of years, but the two do not get along. When asked the cause of the friction between the two of them, Appellant stated, "past problems like girlfriends I'm assuming." Appellant noted, prior to the November 14, 2006 incident, Williamson had threatened him. On November 14, 2006, Appellant and Springs were in Appellant's front yard when Williamson drove past. Williamson beeped the car horn and flipped off Appellant. A short time later, Williamson slowed his vehicle as he drove past Appellant's house a second time, and then stopped. Williamson exited the vehicle and retrieved a baseball bat from the backseat. As Williamson started to pull the bat upward, Appellant pushed him. Williamson continued toward Appellant, but "[b]efore [Williamson] got a chance to really like get aggressive, [I] punched him approximately two times in the jaw." Appellant explained he punched Williamson because he was afraid of him. Appellant grabbed the baseball bat out of Williamson's hand after punching Williamson a third time.
 {¶ 11} On cross-examination, the State asked Appellant about the inconsistencies between his own testimony and Officer Smith's testimony regarding what he (Appellant) had told the officer on the day of the incident. The State also *Page 7 
questioned Appellant about the inconsistencies between his testimony and Chief Curtis' testimony regarding Appellant's prior statements. Additionally, the State asked Appellant if Springs had lied when he stated Williamson never threatened Appellant.
 {¶ 12} After hearing all the evidence and deliberations, the jury found Appellant guilty of felonious assault. The trial court sentenced Appellant to a term of imprisonment of two years.
 {¶ 13} It is from this conviction and sentence Appellant appeals, raising the following assignment of error:
 {¶ 14} "I. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 15} In his sole assignment of error, Appellant maintains he was denied effective assistance of counsel. Appellant predicates his argument on trial counsel's failure to object to the prosecutor's repeating the answers of the State's witnesses when asking subsequent questions. Appellant asserts such served to improperly bolster the credibility of those witnesses. Appellant also contends counsel was ineffective for failing to properly cross-examine the State's witnesses; failing to prepare defense witnesses; and presenting witnesses who were not helpful to the defense.
 {¶ 16} The standard of review of an ineffective assistance of counsel claim is well established. Pursuant to Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 673, in order to prevail on such a claim, the appellant must demonstrate both (1) deficient performance, and (2) resulting prejudice, i.e., errors on the part of counsel of a nature so serious that there exists a reasonable probability that, *Page 8 
in the absence of those errors, the result of the trial court would have been different. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373.
 {¶ 17} We must first determine whether counsel's assistance was ineffective, i.e., whether counsel's performance fell below an objective standard of reasonable representation and whether such violated any of his or her essential duties to the client.
 {¶ 18} If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. As stated above, this requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v.Sallie (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.
 {¶ 19} Assuming, arguendo, defense counsel's performance fell below the objective standard of reasonable representation, we find Appellant has failed to demonstrate the second prong of Strickland, prejudice.
 {¶ 20} First, even if trial counsel had objected to the prosecutor's mode of questioning, there is no way to establish such was prejudicial to Appellant as the witnesses had already answered the questions and the jury had already heard their answers. Additionally, upon reviewing the entire trial transcript, it appears the prosecutor was merely trying to keep the testimony in chronological order and to elicit more detail from the witnesses.
 {¶ 21} Appellant further contends trial counsel was deficient in his cross-examination of the State's witnesses as such only served to reiterate the witnesses' *Page 9 
prior testimony. We do not find such manner of cross-examination falls below an objective standard of reasonable representation. Appellant also claims his trial counsel failed to effectively cross-examine Williamson on the inconsistency in his direct testimony. Williamson testified he could not remember anything after Appellant struck him twice. Williamson subsequently testified, after he was hit, he saw his mother exiting her car, Appellant walking away, and someone throwing the baseball bat toward his mother. Appellant does not explain how counsel's failure to cross-examine Williamson in this regard prejudiced him. Even if trial counsel did cross-examine Williamson on these inconsistencies, Appellant has not established Williamson's answers on these inconsistencies necessarily affected the jury's view of his credibility.
 {¶ 22} Appellant next asserts trial counsel was ineffective for failing to prepare defense witnesses. Appellant submits, if trial counsel had prepared him and the defense witnesses, counsel would have known how each would testify and not present certain witnesses or let Appellant take the stand. The record does not affirmatively demonstrate counsel failed to prepare defense witnesses nor advise Appellant to take the stand. We find, even if trial counsel had prepared Appellant and the other witnesses, there is no indication in this record such preparation would have alerted trial counsel to potentially harmful testimony.
 {¶ 23} Appellant also argues trial counsel was deficient for presenting witnesses who did not aid his defense. Appellant refers to the cross-examination of Dusk Pulver, during which the State asked: "You didn't see any struggle between [Appellant] and [Williamson] over the bat; you didn't see anybody hit with the bat; you didn't see anyone punched." Tr. at 231. Appellant concludes Pulver "absolutely added nothing to the *Page 10 
defense's case, and arguably should have never been called". Brief of Appellant at 19. We find Pulver's answer to this question was arguably helpful to Appellant's case. Even if such was not, the testimony did not hurt the defense and the calling of Pulver as a defense witness was, at worst, harmless. Appellant also refers to the testimony of Joshua Springs, who admitted his view of the altercation between Appellant and Williamson was partially obstructed by a car. Springs added, however, he would have seen if Williamson had been hit by Appellant. Appellant has not explained why this testimony was prejudicial or, in any way, harmful.
 {¶ 24} Based upon the foregoing, we find Appellant is unable to establish the second prong of the Strickland test; therefore, cannot succeed on his ineffective assistance of counsel claim.
 {¶ 25} Appellant's sole assignment of error is overruled.
 {¶ 26} The judgment of the Licking County Court of Common Pleas is affirmed.
 Hoffman, P.J., Gwin, J. and Edwards, J. concur *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1